**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2008 JUN 30 PM 12: 43

BY _____
DEPUTY CLERK

— — — — — — — — — — — — — — — — — —

SHERRILL L. WHITE, pro se
MICHAEL K. DULLEN, pro se
STEVEN M. DULLEN, pro se
                    **Plaintiffs**

              –v–                          **CIVIL ACTION**
                                           **NO.**

STATE OF VERMONT,                          2:08·cv·124
ESSEX COUNTY SHERIFF'S DEPARTMENT,
FORMER-SHERIFF AMOS COLBY, in HIS
OFFICIAL CAPACITY AS SHERIFF (at the
time of this violation), and in HIS PERSONAL
CAPACITY
FORMER-DEPUTY SHERIFF JEFF NOYES.         **JURY TRIAL**
in HIS OFFICIAL CAPACITY (at the time of this  **DEMAND**
Violation), and in HIS PERSONAL CAPACITY
ESSEX COUNTY PROSECUTOR; VINCENT
ILLUZZI, in HIS OFFICIAL CAPACITY AS
STATES ATTORNEY, and in HIS PERSONAL
CAPACITY,
KEVIN VOIGT, in HIS OFFICIAL CAPACITY
and in HIS PERSONAL CAPACITY,
THERESE BOYNTON-HERR, in HER OFFICIAL
CAPACITY and in HER PERSONAL CAPACITY,
MERRILL DALTON, in HIS OFFICIAL
CAPACITY and in HIS PERSONAL CAPACITY,
FORMER- DEPUTY SHERIFF EUGENE COTE
in HIS OFFICIALCAPACITY (at the time of this
Violation), and in HIS PERSONAL CAPACITY
                    **Defendants**

— — — — — — — — — — — — — — — — — —

**CIVIL ACTION PURSUANT**
**TO 28 U.S.C. § 1983**

**NOW COMES BEFORE,** this Honorable Court, the Plaintiffs appearing in pro se and seeking **In Forma Pauperis** status, (see attached forms), all Plaintiffs are formerly of 33 Kemp Hill Road, Canaan, Vermont 05903, now currently residing at the following addresses; Sherrill L. White, P.O. Box 258, Linwood, Ma. 01525; Michael K. Dullen, P.O. Box 258, Linwood, Ma., 01525; Steven M. Dullen, P.O. Box 258, Linwood, Ma. 01525.

**NOW FURTHER COMES BEFORE,** this Honorable Court, the Plaintiff's praying this Court allow them to proceed with this action against the above named Defendants, alleging that the Defendants violated our Civil Rights under the Fourth (4th). Fifth (5th), Sixth (6th), and Fourteenth (14th) Amendments of the Constitution of the United States, in and by making **false allegations** against the Plaintiffs, failing to provide **equal protection under the law,** (Defendant Jeff Noyes and the Essex County Sheriff's Department, **continually failed** to enforce **"orders of protection"** obtained by myself, Sherrill L. White (**at the request of the same Sheriff's Department),** thus causing serious and grievious, irreparable harm to the Plaintiffs, continually putting the Plaintiffs safety at risk by **not providing them with "due process" as their right, failing continually to provide the duties required of them as officers of the law and as officers of the Court.** By Jeff Noyes continually **threatening the Plaintiffs,** not upholding the **oath of office** they took upon being sworn to their jobs, and continuing and **unending harassment of myself, Sherrill L. White, (the mother of the two younger Plaintiffs), of Michael K. Dullen** and his brother, **Steven M. Dullen.** The allegations made in this complaint are very grave ones and the we fully realize this, the allegations will be supported by documents and evidence. There will be allegations made showing

that Former-deputy Sheriff Jeff Noyes fulfilled the threat he had made to me, **Sherrill L. White,** to run me and my sons out of the area and he finally made good on his threat. We can only hope this Court upon reading this complaint and the facts, statements and other evidence supplied, will set right, a great wrong that was done to a family that only wanted to be left alone to work and live in peace.

## 1. Parties

**PLAINTIFFS**

<u>**Plaintiff 1:**</u> This complaint alleges that the Civil Rights of Sherrill L. White who presently receives mail at, P.O. Box 258, Linwood, Ma. 01525, were violated by the actions of the below named individuals.

<u>**Plaintiff 2:**</u> This complaint alleges that the Civil Rights of Michael K. Dullen who presently receives mail at, P.O. Box 258, Linwood, Ma. 01525, were violated by the actions of the below named individuals.

<u>**Plaintiff 3:**</u>  This complaint alleges that the Civil Rights of Steven M. Dullen who presently , were violated by the actions of the below named individuals.

**DEFENDANTS**

<u>**Defendant 1:**</u>  State of Vermont, is the Government body bestowing the powers of office on the following Defendants. This defendant **personally participated** in causing my injury, and I want **money damages**.

<u>**Defendant 2:**</u>  County of Essex, this is the Government body bestowing the powers of office on the following Defendants. This defendant **personally participated** in causing my injury, and I want **money damages.**

**Defendant 3.**  Amos Colby is a citizen of Vermont and was at the time of this violation the Sheriff of Essex County. This defendant **personally participated** in causing my injury, and I want **money damages**.

**Defendant 4:**  Jeff Noyes is a citizen of the State of Vermont and was at the time employed as a Deputy Sheriff for the County of Essex. This defendant **personally participated** in causing my injury, and I want **money damages**.

**Defendant 5:**  Vincent Illuzzi is a citizen of the State of Vermont and is employed as a State's Attorney for the County of Essex. This defendant **personally participated** in causing my injury, and I want **money damages**.

**Defendant 6:**  Kevin Voigt is a citizen of the State of Vermont and is employed as a Customs Inspector at the Canaan, Beecher Falls Ports of Entry. This defendant **personally participated** in causing my injury, and I want **money damages**.

**Defendant 7:**  Therese Boynton-Herr is a citizen of the State of Vermont and is employed as a Customs Inspector at the Canaan, Beecher Falls Ports of Entry. This defendant **personally participated** in causing my injury, and I want **money damages**.

**Defendant 8:**  Merrill Dalton is a citizen of the State of New Hampshire and is employed as a Customs Inspector at the Canaan, Beecher Falls Ports of Entry. This defendant **personally participated** in causing my injury, and I want **money damages**.

**Defendant 9:**  Eugene Cote is a citizen of the State of Vermont and was at the time employed as a Deputy Sheriff for the County of Essex. This defendant **personally participated** in causing my injury. And I want **money damages**.

## CAUSE OF ACTION

**Claim 1:**  On or about the 15th of November, 2002, our civil right to **"due process and equal protection of the law"** as guaranteed under the 14th Amendment were violated.

Supporting Facts:  On November 15th, 2002 Mark Leonard broke into my home and stole property from my oldest son, Michael K. Dullen. On or about the 16th of November, 2002 the same Mark Leonard followed me to a friends house and sat outside for hours watching me and followed me home.

My son Michael K. Dullen became so in fear of my being harmed that on the 17th of November, 2002 he called the Vermont State Police. He gave a statement over the telephone to State Trooper Ballinger, during this interview with Trooper Ballinger, Michael informed the trooper that Mark Leonard was on probation in New Hampshire for stalking me and that there was an **"order of protection"** in place and was good until 2004. Trooper Ballinger Called Mark Leonard and spoke to him, warning him to leave me and my sons alone.

Due to not arresting Mark Leonard for the violation of probation, my family and I were in constant fear of Mark Leonard returning. He called our home and harassed whoever answered the phone. The failure of law-enforcement to arrest Mark Leonard deprived me of "protection under the law".

Former Deputy Sheriff Jeff Noyes, failed to grant me and my sons **"our due process right"** and our **"right to equal protection"**, due to his failing to act in the capacity of a Deputy Sheriff and in that capacity providing me and my sons with the protection he had taken an oath to fulfill he violated the rights of my sons and me . Former Deputy Sheriff Jeff Noyes, at the moment of telling me there was no Statute in the Criminal Code for the

State of Vermont  against someone walking into my house whenever they chose and

knowing this to be not true, violated the very rights he was sworn to protect.

Former Deputy Sheriff Jeff Noyes, also failed to provide **"due process and equal**

**protection"** to either me or my sons by failing to effect an arrest of Mark Leonard on

July 12th, 2004 when as he stated in his narrative of 12/09/04, " on July 12[th], 2004 at

approximately 2200 hours I was approached by Gerard Riendeau (02/18/47) of 48 Kemp

Hill Road in Canaan in reference to Mark Leonard (07/13/55). Riendeau lives directly

across the road from Sherrill White (07/05/59) on Kemp Hill. Riendeau advised that he

had seen Leonard at White's residence a day or two prior. He advised that he saw

Leonard standing in the driveway. He also advised that he had noticed that the rear

number plate of Leonard's vehicle was removed which he found to be odd. Riendeau said

that he is familiar with Leonard and could identify him." The question here is, If Deputy

Noyes who knew there was an **"order of protection"** in place, why would he not have

questioned the fact that Mark Leonard was possibly at my home? Would it not make

sense that Mark Leonard could possibly be there to harm either me or my children? It is

definitely a fact that Jeff Noyes, knowing a wanted felon was at my house made no move

to remove Mark Leonard and assure the safety of me and my children. There can not be a

doubt that he was aware of Mark Leonard being there as his own narrative, signed and

notarized states differently.

Vermont State Trooper Ballinger, failed to grant me and my sons the **"due process and**

**equal protection"** due to the fact that he was informed by my son that Mark Leonard

was in violation of  probation in New Hampshire and by failing to have the New

Hampshire State Police arrest Mark Leonard placed me and my sons in direct danger, given the character of Mark Leonard.

Former Essex County Deputy Sheriff Eugene Cote, violated my civil right of **"due process and equal protection"** by having me serve on Mark Leonard the **"order of protection"** I had obtained against him. Eugene Cote was working at the family gas station in Canaan, Vermont when I went to see him at work to serve the order on Mark Leonard. Deputy Cote went across the street to Maurice's Motel and knocked on the door of the room Mark Leonard was in. Mark wouldn't answer the door, so Deputy Cote came back to me and said Mark would not answer the door. I asked him if he wanted me to serve it. He said go ahead. So I went over to the motel and stood outside the door convincing Mark he wasn't going to get arrested, they just wanted to serve papers on him. He finally opened the door and took the papers. I was there to have him served with an **"order of protection"** and the deputy is unable to serve him so he allows me to go to the door of a motel where the person I sought an order of protection is. I not only go to the room, the deputy doesn't even go with me. I was scared to death that Mark Leonard would reach out and grab me. There was no way the deputy could have made it to the room if Mark Leonard had decided to take an action against me. This was a violation of my rights and also a failure of Deputy Cote to fill his fiduciary duty to me.

State Prosecutor Vincent Illuzzi, failed to provide **"due process and equal protection"** to me and my sons, when he failed to prosecute Mark Leonard on the charge that was initially brought forth. His failure to prosecute was based on a relationship between myself and Mark Leonard that did not exist at this time and hadn't for quite a while. Had he taken the time to investigate the complaint he would have found that out. His claiming

that Mark Leonard was in Florida when Trooper Ballinger told him in his report that he had spoken to Mark Leonard who was in New Hampshire and that Jeff Noyes claimed he had gone back to Massachusetts, it would seem quite likely that Mr. Illuzzi if he had taken time to read the paper work would have known these things. Mr. Illuzzi states, **"it does not appear the ends of justice will be served by filing a burglary charge"**. It would seem that the question here is whether the "justice for me and my sons" would have been served. This was not the first time Mark Leonard had done these things and obviously wasn't the last.

Former Sheriff Amos Colby, failed to grant me and my sons with the **"due process and equal protection".** Amos Colby derived his authority from the County of Essex, which derived their powers from the Constitution of the State of Vermont and the bylaws embodied by the County of Essex. This making Former Sheriff Amos Colby directly responsible for any wrongs committed by his deputies.

The **Vermont Statutes Annotated, under Title 24, Chapter 5 §291,** state the following in part: "before entering upon the duties of his office, a sheriff shall become bound to the treasurer of the county in the sum of $100,000.00, with two or more sufficient sureties by

way of recognizance, before a justice of the Supreme Court."

Also under **Title 24, Chapter 5 § 304** it states the following: " Actions for official misfeasance or neglect of a deputy sheriff, or for cause affecting his administration of the office, shall be sustained only against the sheriff; but the sheriff shall not be amenable criminally for the conduct of his deputy, other than for fines for neglect of duty."

Also under **Title 24, Chapter 5 § 309** it states the following; "A sheriff shall be liable for the official acts and neglects of his deputies, and may take bonds of indemnity from

them. Such deputies may, and when required, shall perform any official duty which may

be required of the sheriff. Returns of their acts and doings shall be signed by them as

deputy sheriffs, and their official acts shall be deemed to be the acts of the sheriff."

Amos Colby is also responsible for the violation of my right to **"due process and equal**

**protection"** as guaranteed me and my sons.

**Claim 2:**   The following civil right has been violated: **"due process and equal**

**protection of the law"** as guaranteed under the 14[th] Amendment of the Constitution of

the United States.

Supporting Facts:   On or about  the 26th of March, 2003 after the breaking into my house

by Mark Leonard I went to court and filed for an "order of protection" to be placed

against Mark Leonard. The "order" was granted by the Honorable Judge Barb Zander. I

placed this order on the bulletin board in the break room at the Beecher Falls Port of

Entry and I made everyone aware of the fact that I had this order.

U.S. Custom Inspector Therese Boynton-Herr, on many occasions violated my right to

**"due process"**  by handing me the phone, when as she states in her statement she knew

the phone calls were from Mark Leonard. Inspector Herr also claims that she saw Mark

Leonard pick me up "twice" after the restraining order was in place. Inspector Herr also

alludes to the fact as she says that, "Mark Leonard" and I were having a relationship.

Inspector Herr states that I took phone calls "to the outer booth". There were two reasons

that this occurred; **1.** was that she and the other Inspectors would hand me the telephone

when a call came in and didn't say who the phone call was from; **2.** was that Mark

Leonard would call and tell me that if I didn't talk to him, he would call Customs and tell

then things about me knowing they were lies and he didn't care as long as he got me in trouble.

Under 18 U.S.C. § 2265, it states that,

**"NOTICE TO LAW ENFORCEMENT AGENCIES"**

**TO ANY PEACE OFFICER IN THE UNITES STATES (tribal, federal or state) Under 18 U.S.C. § 2265 YOU ARE HEREBY AUTHORIZED TO ENFORCE THE TERMS OF, THIS ORDER WITHIN YOUR JURISDICTION AS IF IT WERE AN ORDER ISSUED IN YOUR OWN STATE. THE DUE PROCESS REQUIREMENTS IN 18 U.S.C. § 2265 (b) WERE MET WHEN THIS ORDER WAS ISSUED.**

Inspector Herr also claims she saw Mark Leonard pick me up twice at the Beecher Falls Port of Entry. This is not true. Inspector Herr says that there was a "restraining order" in place, this causing one to wonder, "If Inspector Herr" was aware of the fact that there was an "Order of Protection" in place why did she not do her job and detain Mark Leonard, given her role in law-enforcement, or call the State Police to have them "enforce the order"? Inspector Herr by not doing her job, caused me to not have the protection I should have. Inspector Herr by and through her own actions violated my rights every time she picked up the phone, knowing it was Mark Leonard and handed the phone to me, as she knew there was an "order of protection"

To clarify an issue regarding the duties and classification of Customs.

The following is from;

United States Customs and Border Protection
Office of Internal Affairs/ Personnel Security Division
Attention: Kimberly Lew
1300 Pennsylvania Avenue, NW
Washington D.C.   20229

"…As you are aware, Customs and Border Protection (CBP) is a law enforcement organization and maintains a high standard of conduct for employment. Based on the completed review, we have made a preliminary determination that you don't meet the

suitability standards for employment with CBP at this time. This determination was based on the Suitability Factor(s) specified below: Financial Issues.

U.S. Custom Inspector Kevin Voigt violated my rights many times by denying me **"due process"** and **"making false statements"** concerning the issue at bar. Inspector Voigt, knowing that there was an "order of protection" in place would answer the phone and hand it to me, after claiming in his "statement" that he knew it was Mark Leonard because he recognized the voice. Inspector Voigt being a law enforcement officer had an obligation to detain Mark Leonard anytime that he saw him. Inspector Voigt claims that I allowed Patrick Dullen to stay at my house. Patrick Dullen is the father of my children, he had at that time **"Court Ordered"** visitation rights and the boys wanted to see their father and spend sometime with him. I had no knowledge of there being a warrant for him..

Inspector Voigt also made a claim that I was associating with people involved in criminal activity. This was untrue. Patrick Dullen had just been released from jail and I figured that meant he had paid for what he did and was free to go about getting his life back on track.

Inspector Voigt also makes the statement that I allowed wanted felons to live at the house of me and my sons. This is also not true. I had no knowledge of the fact that Patrick was wanted anywhere.

Inspector Voigt also states that I visited Mark Leonard many times while he was in the Coos County Jail. This also is not true. I visited Mark once and that was because his mother sent money  (cash) to give to him. His mother called every day, so after putting her off I got tired of having his mother call every day and ask if I took it to him.

11

Inspector Voigt also states that he "personally" saw Mark Leonard at my home and with my sons in a truck. If this is true, why didn't he arrest Mark Leonard or call the Essex County Sheriff, or even the State Police. Once again my right to due process and equal protection under the law was violated.

Inspector Voigt in his statement to Internal Affairs states that he was told by an Officer of the Essex County Sheriff's Department that I had filed charges against Mark Leonard. Having this knowledge one would wonder why he would take a call knowing it was Mark Leonard and then hand the phone to me. .

Inspector Merrill Dalton in his statement to U.S. Custom Port Director Amos Hamilton made on April 24th, 2004 at 4:14 p.m. states as follows:

"Amos, on April 24, 2004 at 3:45 p.m. while working the port of entry in Beecher Falls, Vermont while working with Inspector White a man called and I'm sure it was Mark Leonard. This man did not identify himself but I'm sure it was him and Inspector White took the portable phone outside to talk with this person.

I answered the telephone and identified myself as I do when all calls come in here at the Port of Entry. I don't know if operations are taking place with the telephones here with Internal Affairs. When I identified my self there was a pause on his part on the telephone. I'm sure it was him calling here. I truly believe you remember a voice when you have been threatened by that individual.

I thought I should let you know, since you asked me the last time we meet in your office if he had called , Chip."

Inspector Dalton refers to having been threatened by Mark Leonard. Why would Inspector Dalton not have taken action against a person who made a threat to him? He

also states that he knows that Mark Leonard is not to call me at any time much less while I am at work. Inspector Dalton also knew I had an **"order of protection"** in place against this person. In fact Inspector Dalton used to regularly take down from the bulletin board the copy of the order I posted.

Inspector Dalton through his own actions violated my right to **"due process"**.

**Claim 3.**   I,  Michael K. Dullen, had the following rights violated, **"due process and equal protection"**.

Supporting Facts:  On or about the 15th of March, 2002 my mother was being harassed by Mark Leonard by following her every place she traveled. Mark Leonard would yell out the windows of his vehicle and would stand on the balcony of his apartment and yell so that all the kids and my brother and I  could hear him. My mother was directed to be at court on  the 4th of April, 2002 as that was the day Mark Leonard was going to be sentenced for the stalking charge she had brought against him, she was told to be there by 10:30 a.m. My mother had taken my brother to a concert in Montreal for his birthday and had to leave early the next morning to get back for court. While on the way to court Mark Leonard passed her going back to his house.

On or about the 15th of November, 2002 Mark Leonard entered our home and stole a comforter from my bed. He then covered him self in it and stood out side the house looking in through the windows trying to watch my mother. On November 16th of November, 2002 Mark Leonard followed my mother to a friends house. Mark Leonard then sat outside and watched her at her  friends house. When my mother left he followed her home. I became so in fear of my brother Steven or my mother getting hurt that I called the Vermont State Police at their Derby, Vermont station. I spoke to State Trooper

Owen Ballinger and gave him my statement over the phone. I informed Trooper Ballinger at that time, that Mark Leonard was on probation for stalking her. I became nervous about not being with my mother because Mark Leonard could come back at any time, while I was away at college.

On the 14th of March, 2003 Mark Leonard once again broke into our house. This time my mother was in bed. She heard a noise and went to look out her bedroom door and Mark Leonard was standing in the kitchen. She went back into her bedroom but Mark Leonard came to the bedroom door and knocked two large holes in it with his fists. My mother called the Sheriff's Department and Deputy Jeff Noyes came and statement from my mother. In fact he did just the opposite and informed my mother that there was no law against someone entering your house in the State of Vermont and that as long as they left when told and caused no physical harm. Bearing this in mind, I became even more nervous and afraid that Mark Leonard was going to come back and my mother would get hurt. Jeff Noyes and Essex County Sheriff's Department failed to allow me the right to, **"due process and equal protection"**. I was going to college in New Hampshire, I was attending Keene State. I became so nervous because of these things taking place that I began to go to counseling and in late 2007 I was diagnosed with **"depression and anxiety"**. If the Essex County Sheriffs had done their job or the Vermont State **Police** had arrested Mark Leonard back when he broke the **"order of protection"** none of this would have happened to my family.

**Claim 4.**   I, Steven M. Dullen, have had my right to **"due process and Equal protection"** violated.

<u>Supporting facts:</u>   Former Essex County Deputy Sheriff Jeff Noyes, violated my rights to **"due process and the right to equal protection"** by constantly harassing me. I would drive into town with my mother in the car, riding in the back seat. Deputy Noyes would pull me over and claim I was driving without an adult in the car. This became so bad that my mother finally called, Former Sheriff Amos Colby to inquire if the law stated where the adult had to be riding. Sheriff Colby checked and found that there was nothing that dealt with that situation. I never got a ticket I was just pulled over to be harassed, my mother was with me every time.

When I was in or out of school but in the Canaan town limits, there would be a large number (15-20) of us kids standing around some of us smoking. Jeff Noyes would see this and come over to the group. Upon approaching he would single me out every time and I would be the only one who got a fine for smoking.

I had a piece of plastic over a window in my car and was waiting for a relay switch to come in so I could get my window up. When I went anywhere I would be stopped and get a warning by either Jeff Noyes or Eugene Cote. This continued even after I would tell them what the problem was. There were other cars in town that had plastic covering up a window and they never said a thing to them. I had an air freshener on my rear view mirror and would be stopped for having it, yet the other cars with the same thing did not get stopped.

I was detained by the border Patrol one night. While I was being spoken to, Jeff Noyes arrived. He took me and started questioning me. My mother showed up and Jeff Noyes, even though I was a minor at the time, would not let her come and be near me. Finally I was released.

I was the only one at home with my mother as this went on and had to watch her lose everything we had worked for. She became so depressed that she could hardly function at times. For me to sit there and watch this happen was almost more than I could bear. I became so despondent that after I had entered college I dropped out and have never returned. Through no fault of her own, she could find no work in the area and finally we gave up the home we had all worked to obtain. This was a crushing blow to all of us, my mother, my brother Michael and myself.

Deputy Jeff Noyes, constantly and continually harassed me and found things he felt that I had done and took the actions against me in front of my friends and peers. This caused me to be depressed and I turned to medication to ease my depression.

If Deputy Sheriff Jeff Noyes and the law enforcement community had arrested and held Mark Leonard in custody I would not have had the issues I developed and would not have had to watch the depression my mother fell into.

## FACTS

### Procedural History

1. July or August of the year 2001, me and my two (2) sons moved to the West Stewartstown, New Hampshire; Canaan, Vermont area as I had just become an employee of the Customs Department, I had just completed my training at GLYNCO, Georgia. This is basically a boot-camp for a number of services. (D.E.A., FBI, CUSTOMS, etc).

2. I rented a house in West Stewartstown, N.H.. At that time Mark Leonard and I were friends. We had made an agreement.....that he would stay in West Yarmouth, Ma. and take care of the house I had been renting on the Cape. My reasoning behind this

was that if my two (2) sons couldn't make the change...there would always be a place for them to go, and they would have a way to visit their friends in West Yarmouth, Ma.

3. Shortly after I had made the move and my sons were registered in school, Mark Leonard gave me a call and said he was coming to where I had moved.. We argued about it for days and I finally gave in and told him he could come up, but , there were going to be conditions. As closely as I can recall the following are those conditions. that he was there for **(1)** one reason, that was to help with the boys when "I was working", **( 2)** He was to work and help with his share of the bills. **(3).** It was to be a business agreement not a relationship.

4. In the months that followed Mark Leonard and I had disputes concerning his being at my residence, due to the fact that he was not living up to his part of our agreement; he wasn't working steadily and he wasn't doing as he agreed when I let him come to West Stewartstown, N.H. There were other issues but these were the main complaints.

5. On or about the end of the month of February, 2002 I told Mark Leonard that he was to leave my residence. He argued against this but I insisted that he go and informed him that if he wouldn't go willingly I would ask the police to remove him.

6. During the following weeks Mark Leonard constantly harassed me and followed me everywhere I went. As I often had children in my vehicle I became afraid that Mark Leonard could cause the injury to myself, my sons or one of the children who were friends of my children. Mark Leonard would stand on the balcony of his apartment and yell to the children including my sons, things such as your mother is a bitch and

the town whore.

7. During the beginning month of March, 2002, Mark Leonard became more insistent in his harassment....to the point of driving by my home, trying to see in my windows and making gestures when following me. He continued to taunt my children with the same types of vulgarity that he would yell from his balcony.

8. On the 14th of March, 2002, the harassment by Mark Leonard became so bad that I contacted; West Stewartstown Police Officer; Kevin Voigt concerning the problem with Mark Leonard. My children were being subjected to harassment every time they left the house.

9. On the 14th of March, 2002, Officer Kevin Voigt came to my residence and spoke to me about the problem I was having with Mark Leonard. I was living at 8 High Street in West Stewartstown, N.H. at this time. Officer Voigt while at my home and speaking to me observed Mark Leonard driving by a number of times and while driving by attempting to look into my apartment. Officer Voigt, upon seeing these actions by Mark Leonard deemed them to be serious enough that he warned Mark Leonard to stop driving by my home and to leave me alone or that he would be in trouble. This was done at approximately 5:00 p.m.

10. On the 14th of March, 2002, Officer Voigt contacted New Hampshire State Trooper Paul M. Rella, concerning my situation. While speaking with Trooper Rella, Officer Voigt saw Mark Leonard driving past my home continually. He said he got off the phone and warned Mark Leoanrd to stop doing this.

11. On the 14th of March, 2002, I called Trooper Rella and informed him that I had gone to the store and that Mark Leonard was once again following me. When I saw Mark

Leonard behind me I drove to Colebrook, N.H. instead of the store and lost Mark

Leonard somewhere between Canaan, Vermont and Colebrook, New Hampshire.

12. On the 14th of March, 2002, I met Trooper Rella at the Colebrook Police Department

and filled out a statement concerning the above incident.

13. Mark Leonard was arrested and taken to the Coos County Jail in West Stewartstown,

N.H. and held on the charge of Stalking.

14. Wendy Roberts was assigned as counsel to Mark Leonard on the charge of stalking.

15. On the 4th of April, 2002 Mark Leonard was scheduled to go to Court, Trooper Rella

had contacted me and told me I had to be in court in Colebrook at 10:30 a.m. on the

4th. I had made arrangements to take my son to a concert in Montreal for his birthday

and was planning to spend a couple of days with him enjoying Montreal. Trooper

Rella told me if I wasn't there Mark Leonard would go free, that if I was there he was

looking at up to 10 years.

16. I cut short my time with my son in Montreal and made it back in time to go to court.

While on the way to the Court I passed Mark Leonard on his way back to West

Stewartstown. I got to the Court and was told they had just let Mark Leonard go on a

plea deal.

   a. not only was he not given any time, he beat me back to town

17. Mark Leonard was sentenced to 120 days in jail, with all of it suspended except for

the 30 days he had already served and probation with an order of protection to stay

away from me.

18. On or about the 17th of November, 2002 Michael Dullen called the Vermont State

Police at the Derby Barracks to report a burglary that had occurred on the 15th of

November, 2002 at 33 Kemp Hill Road, Canaan, Vermont 05901. Mark Leonard had broken into the house and stolen a comforter from the bed of Michael Dullen and wrapped himself in it and stood outside the window watching Sherrill White. (this according to a narrative made by Trooper Ballinger of the Vermont State Police),

19. Michael Dullen, at the time of making a statement to Trooper Ballinger, informed him that Mark Leonard was on probation in New Hampshire for stalking his mother. That all he and his mother wanted was to be left alone.

20. Trooper Ballinger contacted Mark Leonard by telephone (603-246-3347), and informed him that he was to leave me and my family alone.

    a. it would be curious to know why Trooper Ballinger, having been given the fact that Mark Leonard was on probation in New Hampshire and that I had an "order of protection" against him, why would he not have arrested him.

21. On November 16th, 2002 Mark Leonard followed me to a friends house and sat outside for several hours and then followed me home.

22. On November 17th, 2002 my son Michael who was becoming afraid for my safety, called the Derby, Vermont State Police At the time of contact with the State Police Michael gave Trooper Ballinger a phone statement.

    a. when Michael was asked why he had waited until now to call, Michael told Trooper Ballinger that all he wanted was for him and his mother to be left alone and that he didn't want to get Mark Leonard in trouble; (this even after all the stuff Mark Leonard had done to this family).

        (i). The hard thing to fathom here was why no-one arrested Mark Leonard for violating his "probation" and the "order of protection" issued by the New

Hampshire Court, this "order of protection" did not expire until 2005.

23. Between November, 2002 and March 14th, 2003 my family and myself were under constant fear of Mark Leonard coming back. This was due to the fact that he would call the house anywhere between 30 and 38 times a day. These calls were always threatening and mostly were answered by my youngest son (Steven Dullen) who was 15 at the time. Due to Mark Leonard's constant threats my son Steven went into a depression. During most of these calls he threatened that he was on the way to my house. Steven would tell him to go ahead that the police would be waiting for him.

24. On the 14th of March, 2003 Mark Leonard once again entered my home. I was in bed and heard a noise that sounded like someone walking in the snow. Upon getting out of bed to see if there was anyone there, I, upon stepping out of my room saw Mark Leonard, in my kitchen walking towards my bedroom. I ran back into my bedroom and shut the door but Mark Leonard beat on it with his fists and knocked 2 large holes in it.

   **a.** this causing it to be necessary to replace the door, which would cost $60.00.

25. On the 14th day of March, 2003 after Mark Leonard entered my house I contacted Jeff Noyes and he came and took a statement concerning the incident. At this time Jeff Noyes after taking the statement informed me that the State of Vermont did not have a law preventing someone from entering a persons dwelling, as long as the person left with out causing physical or bodily injury.

26. On the 9th day of April, 2003 the State through Prosecutor Vincent Illuzzi filed and information charging Mark Leonard with the Crime of; 13 V.S.A. 3705, Felony Unlawful Trespass.

27. On the 7th day of May, 2003 a warrant was issued for the arrest of Mark Leonard for the crime of Felony Criminal trespass.

28. Jeff Noyes in his narrative on this incident makes notice of the fact that, "I was unable to locate Leonard before he returned to Massachusetts." This alone showing that he had the knowledge of the fact that he knew where Leonard lived.

   a. once again there was no protection put forth for the victims.

   b. If as Vincent Illuzzi says in his letter of January 21st, 2004 the offense is so serious that it can not be dropped, "why did they not have Mark Leonard arrested in Massachusetts"?

29. On the 14th of May, 2003, Vincent Illuzzi sent a letter to Trooper Own Ballinger saying that he felt prosecution was unwarranted in the case of Mark Leonard due to the "almost four year relationship" and attesting to the fact that Leonard was in Florida.

   a. as shown above in Jeff Noyes narrative, he claimed Leonard had returned to Massachusetts.

   b. on the 9th of May, 2003 as shown above there was an information filed by Vincent Illuzzi, charging the same Mark Leonard with a crime.

   c. on the 7th of May, 2003 there is an arrest warrant issued for Mark Leonard.

   d. On May 14th, 2003 Vincent Illuzzi in a letter to Trooper Ballinger states as shown above there being nothing at the present time to prosecute Leonard successfully for.

30. On or about the beginning of September, 2003, my children's father; Patrick Dullen was released from jail and came to see his children. Michael and Steven Dullen.

    **a.**  Patrick had court ordered visitation.

    **b.**  He had just been released on bail from the jail in New Hampshire, and was unaware of any outstanding warrants.

        **(i).**  He had told me that all of his criminal charges had been taken care of as when you are bailed out, they do a records check and if there are any warrants they do not release you.

**31.** Patrick Dullen was staying at my house for a couple of weeks until he could get a place to stay. I saw nothing wrong with this in fact I felt I was being a good person in allowing it and putting my children's father in close proximity after having not seen him for so long.

    **a.**  my children were very excited and happy with the fact that their father was there.

**32.** On or about the middle of September, 2003 through the beginning of October, 2003, I purchased a new vehicle and Patrick was riding with me to Newport to register it. As we came into the area between Newport and Derby I was pulled over by the Vermont State Police and Patrick Dullen was arrested.

    **a.**  the State Police took him to their Derby barracks, where I stopped after having registered the vehicle.

    **b.**  I was told he was being taken to the Court at Guildhall.

    **c.**  I went to the Court to see what was going to happen and found he was being held on $1,600.00 cash or surety.

    **d.**  I went home from there and obtained some money he had left at my house and went to St. Johnsbury to the jail and met a bail bondsman and bailed him out. He was charged with "theft of services" for not paying a motel bill.

33. I was told again, by Patrick that no one knew of the warrant or it would have been taken care of already.

34. Patrick at some time in November obtained his own place to live and then came to the house only to see the boys. They maintained a good relationship

35. In the beginning or middle part of December, 2003, Patrick was arrested and released on his own recognizance.

36. In the beginning of January, 2004, Patrick went to New York where he was once again arrested and myself nor the boys heard from him until he was released from jail sometime in April of 2008.

37. On the 12th of July, 2004 while I was at work I received a phone call from Mark Leonard, asking me what I would think of him coming up to see me? I told him, it was a very stupid thing to do because he would be arrested and I would get in trouble.

   a. at this point he told me he was at my house. I didn't say anything more to him at that time because my son was home alone and now Mark was at the house with him and Mark Leonard is capable of violence.

   b. upon arriving home much later than I had intended due to the fact that the roads were shut down due to flooding, I told Mark Leonard to get out of my house. He said, "I can't the bridges are out".

38. On or about the 14th of July, 2004 Deputy Sheriff Jeff Noyes (now ex-deputy sheriff) at my residence at 33 Kemp Hill Road, Canaan, Vermont 05903 made the arrest of Mark Leonard (my relationship with Mark Leonard having ended a number of years earlier after I had him arrested and charged with stalking me).

    **a.** This arrest was pursuant to a warrant issued for breaking into the Plaintiff's house.

**39.** On or about the 19th of July, 2004 Deputy Sheriff Jeff Noyes, issued a summons to the me charging; **"accessory after the fact"**.

    **a.** This was based on the fact that I didn't contact law enforcement saying that Mark Leonard was at her house.

    **b.** I was not home when Mark Leonard arrived at my property. I was at work. I was a Customs Inspector at Canaan/Beecher Falls, Vermont for Homeland Security.

        **(i).** Mark Leonard called me at work stating, **"what would you think if I came up to see you"?** I told Mark Leonard that he knew, he could not come there because I would get in trouble if he was near me. At that point Mark Leonard said, **"well I am at your house now"**. My son "Steven M. Dullen" also a Plaintiff in this case who was 17 at the time was alone at the house with Mark Leonard and I was afraid to tell him to leave because I was afraid he would get violent and didn't want to put my son in any danger. (I had already had Mark Leonard arrested and charged with stalking, which he had plead down but was on probation in New Hampshire for at the time).

        **(ii).** During the time it took between speaking to Mark Leonard and my shift ending, one of the beaver dams on the upper Connecticut Lakes and River had broke due to flooding and the bridges were washed out. This causing there to be no way for Mark Leonard to leave when I arrived home. I

told him that as soon as any bridge was open he was out of there or I
would have the police arrest him.

## DISCUSSION

I and my sons were treated in a manner that was decided in the old Western days as
unacceptable and by the Courts in today's society ruling that no one has the right to
deprive a citizen of their Civil Rights. In the issue at bar, an ex-deputy sheriff had made a
threat to me and was determined to turn the threat to action. Ex-deputy sheriff Jeff Noyes,
alone and in collusion with others intentionally denied me the rights that every person in
the United States is guaranteed in the Constitution.

Is there any person or persons who have the right to deny any citizen their God given
rights, When the Constitution was framed, it was done with the hope that all people
would grasp its concepts and use them to make the Country a free democratic society. To
accomplish that, it was necessary, that the people in the different fields of government
whether elected or appointed, and the people these officials hire must be overseen by that
same official. For this to be done it becomes necessary that these officials are outstanding
in their personal lives, incorruptible, and aware of the services that the citizenry needs
and they must be satisfied with the fact that these duties are carried out in a pleasant and
forthright manner. In the event they have a person, that they know or feel could cause
them to be unable to perform impartially the duties of their position, they upon realizing
it should bring the situation to the attention of their supervisor and find a resolution to
that situation.

When any person much less an officer of the law makes a threat to a person that he
would run me and my children out of the County, that is a very upsetting situation. More,

upsetting though is the fact that this same person is sworn to give protection to the victim (which is my self) by way of upholding the law.

When the people I work with violate an "order of protection" (which I have taped to the wall in the Customs Building, and I have made everyone who works there aware of the fact I have the order) continually, by knowing the person calling on the phone is Mark Leonard (at least they claim to know who he is from hearing his voice). During the time I was being investigated, these same people made statements that they saw and heard me talking to Mark Leonard. The reason I was on the phone in the first place was because, one of my fellow employees answered it and handed it to me.

What a reasonable person would think or do in the same situation as mine is the question everyone should be asking their selves. I have called the police every time Mark Leonard comes around. What gets accomplished, nothing. They will not extradite they claim. When they do arrest him, he is let go on his own recognizance, this even after not showing up for court the last time around. The State's prosecutor send a letter to me saying in part, from the 3rd paragraph " Based on the information presented in your reports, I would think it would be difficult to convince a jury 'beyond a reasonable doubt' that Mr. Leonard did not have a privilege to enter the Dullen-White residence, given their almost four year relationship." It further goes to the last paragraph and Mr. Illuzzi says, " For all these reasons, I do not believe that further action is warranted at this time." A reasonable person would, after getting this letter from the State Prosecutor make an assumption that the case was over. In fact at the end of the statement given by Michael Dullen, Trooper Ballinger, wrote in his last paragraph, " Dullen and White appeared to be satisfied." No further action taken. ***CASE CLOSED***. Again here is the Officer who

investigated my complaint saying case closed. I had told Jeff Noyes, when Mark Leonard called me, 30 to 38 times a day. I once again had put my faith in the justice system and once again nothing was done in the way of offering me any protection. Mark Leonard had been in prison for "Armed Robbery". this giving just cause for my fear of him when he was in my home with my 17 year old son by his self. I raised my children to be always thankful that there are police officers and to think what a mess everything would be if there was no one to keep things under control. As can be seen here....I made every attempt to have the Justice System help me and no one would...I called the Sheriff and was told there was no law against some one walking into my house whenever they wanted. This I was to find out, definitely not true. I was seen by Vermont State Trooper Ballinger after calling the State Police at the urging of friends. None of could believe that someone could just walk into your house any time they wanted to. Upon arrival at my home, Trooper Ballinger and I spoke of the incident and I told him what Jeff Noyes had told me about there being no law...Trooper Ballinger, at that time told me that I was the third woman he had spoken to who had been told the same information by Jeff Noyes. He told me about a woman whose ex broke into her house and caused some damage and when she called the Essex County Sheriff's Department she was told the same thing. That there was no law in Vermont saying he could not do that.

I can not understand why Jeff Noyes would tell all of the women he spoke to in that period that there was no law pertaining to someone entering our homes. That left all 3 of us and my two sons with out protection and believing that there was nothing that we could do to protect our selves.

In today's world there needs to be a law enforcement system that all the people can feel free to use. I and my sons have tried in vain to use the system as it exists. The disturbing thing as can be seen in the facts as shown in this case is that you have law enforcement that does not want to protect the citizens that they are sworn to protect. Any time you get a system that fails the people so many times you create a vacuum. The citizen starts to think there is no use in going to the system, because they will get a typical response and in the end you receive no help. Sometimes this makes the party seeking help in a much worse scenario than they were in when they just remained a victim.

## ARGUMENT

I cannot in any way possibly describe what has gone on to me and my family because of the failure of the Deputies and the Sheriff of Essex County to provide the essential products of the Constitution. To say they failed me is not even a small part of what they did. Then to find out that there are other people that suffered the same lack of protection, to the extent by Jeff Noyes of coming to someone's home and telling an out right untruth concerning the protection that was due to all of us, is almost more than I can bear even today. If there is no protection provided to the "People of the State of Vermont" by it's law enforcement community who are we to get it from?

One of the questions that should be brought to mind is, why would a reasonable person after having called the Essex County Sheriff's Department on many occasions, believe that there was any good to be accomplished by calling them again?  My home gets broken into and I am told, there is no law against this. Only to finally question the issue and am told by a Vermont State Trooper that, of course there is a law against it.

Then I am informed how the same deputy had told two other women besides myself that same story.

There can not be any, **"due process or equal protection"** for anyone with the law enforcement agents available deciding that, they will pick and choose the laws and how they will enforce those they do decide exist.

As will be shown in this action, if I and my sons are allowed to proceed is that Jeff Noyes wanted me and my sons out of his area. It will be shown that he did everything in his power to accomplish this. It will be shown that he lied, enforced the laws to achieve the end result that he sought and there was no one to stand in his way. It will be brought out in this action, that Jeff Noyes used his **"power of office"**, to gain things he could never have obtained if he didn't have a means of exerting pressure on the object of his desire.

Many things have been kept under wrap in the County of Essex and the town of Canaan for many years. The Plaintiffs can only hope that the Court will allow them to proceed so that the wrongs done to ourselves can be corrected and possibly other people who have had the same experience may come forward, finding that justice is available to everyone.

## **INJURIES**

I, Sherrill L. White have been injured as follows:

1. I have lost everything I worked for.

2. I have suffered great depression and not been available to my children due to this suffering of depression.

3. I have lost a job that offered great security for my family.

4.  I have watched my credit go from excellent to the point where I can't even obtain telephone service without a huge deposit.

5.  I have lost the ability to spend the time with my children that I was once able to do, this being due to the fact that I am now working 3 jobs trying to catch up on bills.

6.  I have not been able to provide for my children as I should. They have suffered greatly through all of this.


During the three years since my mother, Sherrill White resigned from her job as a United States Customs and Border Protection Officer, I  Michael K. Dullen have suffered the following financial and emotional hardships.

1.  Since she was unable to financially assist me with my college bills, I had to acquire my own student loans. I now have loans in excess of $70,000.00. These loans began to come due during 2008.

2.  It also became necessary for me to provide financial assistance for both my mother and brother, Steven Dullen. I have given in excess of $5,000.00 to both of them combined.

3.  I began to go to counseling while attending Keene Sate College. In late 2007 I was diagnosed with Depression and Anxiety. My anxiety led me to performing poorly in college which led to my eventual withdrawal. I withdrew so that I could work more to pay the bills and loans I have incurred.

I, Steven M. Dullen have been injured in the following manner:

1.  Due to the treatment of my mother and myself I became terribly depressed and couldn't focus on school, so I dropped out.

2. I got my G.E.D. and went to Mesa, Arizona to college and dropped out because I was worried about my mother and wanted to be back where I knew I could help her if it became necessary.

3. I was afraid of seeing a doctor for my depression because I was afraid I would become addicted to the medication

4. I lost the incentive to move on with my life due to the fact that my mother had done nothing wrong, but because the Sheriff's and the State Troopers would not do their job and lock Mark Leonard up. I became more and more depressed.

## **RELIEF SOUGHT**

Plaintiff 1, Sherrill L. White seeks relief as follows:

1. Compensatory Damages to be decided by a jury,

2. Punitive Damages to be decided by a jury,

   **SUCH FURTHER RELIEF,** as this Court deems fair and just.

Plaintiff 2, Michael K. Dullen seeks relief as follows:

1. Compensatory damages to be decided by a jury,

2. Punitive damages to be decided by a jury,

   **SUCH FURTHER RELIEF,** as this Court deems fair and just.

Plaintiff 3, Steven M. Dullen seeks relief as follows:

1. Compensatory damages to be decided by a jury,

3. Punitive Damages to be decided by a jury,

   **SUCH FURTHER RELIEF,** as this Court deems fair and just.

Respectfully submitted,

Sherrill L. White, pro se
P.O. Box 258
Linwood, Ma.   01525

Michael K. Dullen, pro se
P.O. Box 258
Linwood, Ma.   01525

Steven M. Dullen, pro se
P.O. Box 258
Linwood, Ma.    01525