UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SHERRILL L. WHITE, Pro Se,                    )
MICHAEL K. DULLEN, Pro Se, and                )
STEVEN M. DULLEN, Pro Se,                     )
                                              )
            Plaintiffs,                       )
                                              )
    v.                                        )    Civil No. 2:08-CV-124
                                              )
STATE OF VERMONT, ESSEX COUNTY                )
SHERIFF'S DEPARTMENT, FORMER-                 )
SHERIFF AMOS COLBY, in his Official           )
Capacity as Sheriff (at the Time of This      )
Violation), and in His Personal Capacity      )
FORMER-DEPUTY SHERIFF JEFF                     )
NOYES, in His Official Capacity (at the       )
Time of This Violation), and in his Personal  )
Capacity, ESSEX COUNTY PROSECUTOR             )
VINCENT ILLUZZI, in his Official              )
Capacity as States Attorney, and in his       )
Personal Capacity, KEVIN VOIGHT, in his       )
Official Capacity and in his Personal         )
Capacity, THERESE BOYNTON-HERR,               )
in her Official Capacity and in her Personal  )
Capacity, MERRILL DALTON, in his              )
Official Capacity and in his Personal         )
Capacity, FORMER-DEPUTY SHERIFF               )
EUGENE COTE in his Official Capacity (at      )
the time of this Violation), and in his       )
Personal Capacity,                            )
                                              )
            Defendants.                       )

## <u>Motion To Dismiss And/Or For Summary Judgment<br>And Memorandum Of Law</u>

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 56 and Local Rule 7.1,

Defendants Kevin Voight, Therese Boynton-Herr, and Merrill Dalton (the "Federal

Defendants"), move for dismissal and/or for summary judgment in this matter.

Plaintiffs' damages claims are time barred and, in any event, qualified immunity insulates the Federal Defendants from liability. To the extent Plaintiffs seek to hold the Federal Defendants liable in their official capacities for damages, sovereign immunity precludes such claims and, therefore, the Court lacks jurisdiction. In further support of this motion, the Federal Defendants submit the following Memorandum of law.

### Memorandum Of Law

### I.     Background And Allegations Of The Complaint

Plaintiffs brought this action against numerous Defendants. This Court, in an Opinion and Order, dated March 6, 2009, (the "Opinion and Order"), dismissed nearly all of the claims asserted by Plaintiffs against the non-federal Defendants. The Opinion and Order fully describes the allegations set out in the Complaint against the Federal Defendants.[1] In short, the Complaint alleges that the Federal Defendants, all of whom are officers of U.S. Customs and Border Protection, worked with Plaintiff Sherrill White prior to the date she resigned as a Customs and Border Protection Officer. Complaint 4, 9-13, 31. White alleges that the Federal Defendants passed telephone calls to her, at work, when they knew both that the caller was Mark Leonard and that White had a restraining order against him. She appears to contend that the actions of the Federal Defendants and their failure to

---

[1]Solely for purposes of this motion, the Federal Defendants accept the factual allegations of Plaintiffs' Complaint. In actuality, Federal Defendants believe the Complaint contains numerous factual inaccuracies.

enforce the alleged restraining order violated her constitutional rights under the theory set out in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Complaint 4, 9-13. She also alleges that Defendants Voight and Boynton-Herr made false statements about her, apparently during an internal, workplace investigation of some sort. Complaint 11-12.

## II.    Rule 12(b) Standard For Dismissal

Accepting the well-plead allegations of the Complaint as true, dismissal under Rule 12(b)(6) is justified if the plaintiff has failed to state a legal claim that would entitle him or her to relief. If the Complaint does not set out enough facts "to raise a reasonable expectation that discovery will reveal evidence supporting plaintiff's claim," dismissal is warranted. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1968 (2007). A mere "possibility" that plaintiff might prove his or her claim is insufficient. *Id.; see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Bain v. Cotton*, No. 2:06-CV-217, 2009 WL 1660051, at *3 (D. Vt. June 12, 2009). Here, on the grounds set forth below, the Complaint fails to state a claim upon which relief may be granted.

In assessing a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court is empowered to "'weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations ....'" *Ensign-Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. 1018, 1023 n.7 (D. Conn. 1993) (quoting *Mortensen v. First Fed.*

3

*Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  Plaintiff bears the burden of proving the subject-matter jurisdiction of the court.  *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).  Plaintiffs cannot carry that burden in this case.[2]

### III.    The Claims Set Forth In The Complaint Are Time Barred

The applicable statute of limitations precludes the Complaint's *Bivens* claims.  As numerous Courts, including this one, have held, *Bivens* claims are subject to the relevant State's personal injury statute of limitation.  *See Chin v. Bowen*, 833 F.2d 21, 23-24 (2d Cir. 1987); *MacCaffray v. United States*, No. 2:97-CV-403, 1998 WL 560047, at *4 (D. Vt. Aug. 27, 1998).  In this instance, the three-year statute of limitation, set out in 12 V.S.A. § 512(4), applies.  *Accord MacCaffray*, 1998 WL 560047, at *4.  Since the Complaint was filed on June 30, 2008, the causes of action must have accrued no earlier than June 30, 2005.[3]  The Complaint cannot survive that requirement – as this Court has already held.

---

[2] Service upon the Federal Defendants was not effected in accord with the 120-day time limit set out in Fed. R. Civ. P. 4(m), which required service to be made by October 28, 2008.  Service regarding the Federal Defendants was initially sent to the Vermont Attorney General's Office.  *See* Papers 17-19.  The Attorney General's Office indicated that the Federal Defendants were not State employees on December 10, 2008.  Service was attempted by delivering non-conforming documents to the U.S. Attorney's Office on February 26, 2009.  Service was properly effected upon the Federal Defendants on May 6, 2009, some 311 days after the filing of the Complaint.  Even ignoring that failure, *see Husowitz v. American Postal Workers Union*, 190 F.R.D. 53, 57 (E.D.N.Y. 1999), the Complaint is subject to dismissal.

[3] Plaintiffs filed for leave to proceed *in forma pauperus* on June 3, 2008. Using that date, the statute of limitations still precludes the claim.

In the Opinion and Order, the Court correctly determined that, with the exception of certain allegations against Defendant Noyes, "all other material facts in the Complaint appear to fall within the 2001-2004 time period." Opinion and Order 16; *see id.* 19 n.5 ("The only allegations not falling outside of the limitations period, as noted above, may be Steven Dullen's undated claims of harassment by Noyes."). Based on that reading, and following the very same Vermont statute of limitations applicable to the *Bivens* claims, the Court concluded that nearly all of Plaintiffs' claims against the non-federal Defendants were time barred. *Id.* 16-18. The same ruling should hold true with regard to the Federal Defendants. *See Johnson v. Holder,* 564 F.3d 95, 99 (2d Cir. 2009) (law of the case doctrine commands that "'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case'" unless "'cogent and compelling reasons militate otherwise.'") (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)).

An additional fact further underscores the stale nature of White's claims. The Complaint clearly acknowledges that it has been three years since White resigned from Customs and Border Protection. Complaint 31. As all of the claims against the Federal Defendants arise from alleged acts or failures to act that occurred during White's time as a Customs and Border Protection Officer, the

5

Complaint is barred by 12 V.S.A. § 512(4).[4]  The Court need go no further to dismiss the Complaint in this action.

## IV.    White's Claims Are Also Barred By Qualified Immunity

White's attempt to hold the Federal Defendants liable for allegedly violating her constitutional rights is also precluded by the doctrine of qualified immunity. The Federal Defendants did not violate the law, much less the "clear law," necessary to surmount the protections of qualified immunity.

### A.    Qualified Immunity

Qualified immunity provides federal officials who act with "objective reasonableness" a protected sphere within which they may perform their duties without fear of civil suit.  *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982); *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 268-69 (2d Cir. 1996).  To determine whether an official acted with "objective reasonableness," courts examine whether a plaintiff has alleged a violation of a constitutional or statutory right at all.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  If she has, a qualified immunity defense can still be established if:  "'(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that

---

[4] To the extent any doubt remains, the Federal Defendants submit the accompanying Declaration of Anthony Palazzetti.  It makes clear that White resigned from Customs and Border Protection in December 2004.  If necessary for the Court's determination, the Federal Defendants ask that the Court consider the Declaration under Rule 12(d) and convert this motion to one for summary judgment under Rule 56.

his action did not violate such law.'" *Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir.

1999) (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) and *Salim v.*

*Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)).  As a result, to lose the protections of

qualified immunity, the "contours of the right [allegedly violated] must be

sufficiently clear that a reasonable official would understand that what he is doing

violates that right. . . . [I]n the light of pre-existing law the *unlawfulness must be*

*apparent*." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (emphasis added); *see*

*Saucier v. Katz,* 533 U.S. 194, 200 (2001) (noting same).  Where the determination

of whether clear law has been violated can more easily be determined, the Supreme

Court has countenanced proceeding with that analysis as an initial matter.

*Pearson v. Callahan,* 129 S. Ct. 808, 818 (2009).

     Qualified immunity is correctly seen as an immunity from suit, not merely a

defense to liability.  *See Saucier*, 533 U.S. at 200; *Lennon v. Miller*, 66 F.3d 416, 421

(2d Cir. 1995); *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992).  It is "'an

entitlement not to stand trial or face the other burdens of litigation.'" *Saucier*, 533

U.S. at 200 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985)).  The

determination of whether an official is entitled to qualified immunity is normally a

legal issue to be resolved by the court well prior to trial.  *See Hunter v. Bryant*, 502

U.S. 224, 228 (1991); *Mitchell*, 472 U.S. at 528.  As a consequence, qualified

immunity can be determined in a motion to dismiss if the allegations so warrant.

"Unless the plaintiff's allegations state a claim of violation of clearly established

law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell*, 472 U.S. at 526.  Indeed, the Supreme Court has specifically noted that qualified immunity may be resolved via a motion to dismiss.  *Crawford-El v. Britton*, 523 U.S. 574, 597-98 n.19 (1998); *see also Young v. Selsky*, 41 F.3d 47, 52-53 (2d Cir. 1994) (noting same).  Qualified immunity insulates the Federal Defendants from the claims in this case.

### B.     White Does Not State A Constitutional Violation, Clear Or Otherwise, Of The Due Process Clause

White's allegations concerning the Federal Defendants' failure to enforce the restraining order or take other action to protect her from Leonard do not state a constitutional claim.  No such claim is permitted under either the procedural or the substantive protections of the Due Process Clause.  The Complaint, thus, fails to allege a violation of any clearly-established constitutional law.

As an initial matter, the authority of Customs and Border Protection Officers to effect arrests for state crimes is circumscribed.  Under 19 U.S.C. § 1589a, the Federal Defendants have authority to enforce federal laws.  Under 20 V.S.A. § 2222, federal law enforcement officers who obtain certification through the Vermont Criminal Justice Training Council are granted limited authority to effect arrests under state law in situations involving threats of "serious bodily injury" or the possible escape of a felon or of someone who has committed a crime in the presence of the officer.  *Id.* § 2222(c).  Even assuming that the Federal Defendants had obtained such certification, since none of the situations set out in Section 2222(c)

are presented by the allegations of the Complaint, the Federal Defendants would not have been authorized to arrest Leonard. That conclusion bars White's constitutional claim at the threshold.

If that impediment is overcome, however, the U.S. Supreme Court has recently made plain that: "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005). In *Town of Castle Rock*, the Court examined the failure of a town to enforce a restraining order and whether that omission could be the basis for a claim under the procedural component of the Due Process Clause. It concluded that the plaintiff did not have a "property interest in police enforcement of the restraining order" and that the plaintiff's procedural Due Process claim failed as a matter of law. *Id.* That holding applies with full force in this case.

The same result ensues with regard to any claim White may assert based on substantive Due Process. In that context, courts have developed two, narrow exceptions to the rule that the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 196 (1989); *see Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another"); *Marsh v. Kirschner*, 31 F. Supp. 2d 79, 81 (D. Conn. 1998) ("no federal right to have criminal wrongdoers prosecuted"). First, an actionable duty to protect may arise if there is a "special relationship" between the victim and the governmental entity. Second, such a duty may arise if the governmental entity has created or increased the danger to the victim beyond what it would otherwise have been. Neither of these exceptions apply in this instance.

There was no "special relationship" between White and the Federal Defendants that would trigger the protections of the Due Process Clause. Such relationships are limited to those where the government has actual control over the alleged victim and, as a result, is chargeable with his/her protection. As explained by the Supreme Court:

> it is the State's affirmative act of restraining the individual's freedom to act on his own behalf – **through incarceration, institutionalization, or other similar restraint of personal liberty** – which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 200 (emphasis added). Based on that principle, the Second Circuit has noted that courts have "focused on involuntary custody as the linchpin of any special relationship exception." *Matican v. City of New York*, 524 F.3d 151, 156 (2d Cir. 2008).

Here, White has not alleged, nor could she, the type of special relationship necessary to establish a Due Process Claim. Hence, her claim fails as a matter of law.

10

White's claim fares no better under the "state created danger" exception. While not specifically endorsed by the U.S. Supreme Court and explicitly rejected by the U.S. Court of Appeals for the Fifth Circuit, *Longoria v. Texas,* 473 F.3d 586, 593 (5th Cir. 2006), the "state-created danger" exception permits a Due Process cause of action if law enforcement "assisted in creating or increasing the danger to the victim" of a third-party criminal. *See Dwares v. City of New York*, 985 F.2d 94, 98-99 (2d Cir. 1993), *overruled, in part, on other grds*, *Phelps v. Kapnolas,* 308 F.3d 180, 187 n.6 (2d Cir. 2002).[5]  In this regard, the Second Circuit has drawn a line between "passive" failure to act, which is not actionable, and "affirmative" conduct, which may increase the risk of harm to a victim and which may be actionable. *Matican,* 524 F.3d at 157.

In this case, the Complaint makes no contention that the Federal Defendants actually created any danger to White, and the acts and omissions that are alleged do not rise to the type of "affirmative" conduct necessary to satisfy the state-created danger exception.  The Second Circuit has found state-created dangers only in

---

[5]White's allegations of emotional distress, Complaint 30-31, also fall short of the "bodily injury" normally required to state a Due Process Claim.  In *Carey v. City of Wilkes-Barre*, 3:05-2534, 2006 WL 4451561 (M.D. Pa. Sept. 12, 2006), for example, the Court stated that: "the cases in which cognizable state-created danger claims have been recognized involved death or substantial physical injuries or assaults.  Courts have refused to recognize such claims where a plaintiff's injuries have been less severe."  *Id*. at *4 (quoting *Miller v. Webber*, 96-5832, 1997 WL 698043, at *1 (E.D. Pa. Nov. 4, 1997)).

extreme cases where there has been near-collusive conduct between law

enforcement and the future criminal actors.  As the *Matican* Court summarized:

> we have found state-created dangers (or denied summary judgment
> where state-created danger theories were alleged) where police officers
> told skinheads that they would not prevent them from beating up
> protesters in a park, *Dwares*, 985 F.2d at 99; where police officers gave
> a handgun to a retired officer who then shot a fleeing robber, *Hemphill
> v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998); where a prison guard told
> inmates that it was "open season" on a prisoner, and the inmates beat
> up the prisoner, *Snider v. Dylag*, 188 F.3d 51, 55 (2d Cir. 1999); and
> where police officials encouraged an off-duty colleague to drink
> excessively, after which he killed three pedestrians in a car accident,
> *Pena [v. DePrisco],* 432 F.3d [98,] at 110-11 [(2d Cir. 2005)].  By
> contrast, we held that no state-created danger existed where a police
> officer failed to intervene to prevent a colleague from shooting someone
> during an altercation.  *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir.
> 1994).

*Matican*, 524 F.3d at 157.  In fact, the Second Circuit has almost exclusively limited

the state-created danger to instances "where state officials had a direct relationship

with the third party who caused injury."  *Id.* at 158 n.7; *Lombardi v. Whitman,* 485

F.3d 73, 80 (2d Cir. 2007) (noting same).

Here, White alleges that the Federal Defendants passed along telephone calls

from Leonard despite knowing that she had a restraining order against him.  Such

actions fall far short of the extreme conduct that has been found sufficient to justify

a claim under the state-created danger doctrine.  There is no allegation that the

Federal Defendants colluded with Leonard or told him it was permissible for him to

take any actions against White.  (Indeed, it is unclear precisely what actions taken

by Leonard are allegedly attributable to the claimed omissions of the Federal

Defendants.)[6]

While White does provide a single allegation of an affirmative act by

Defendant Dalton, that act is also insufficient to establish a state-created danger

cause of action.  White claims that Defendant Dalton removed a copy of the

restraining order she obtained against Leonard from a bulletin board at her former

workplace.  Complaint 11.  Even if true, such conduct did not increase the risk of

harm to White.  The Complaint specifically alleges that, even without that posting

on the bulletin board, White had "made everyone aware of the fact that [she] had

this order."  *Id.* at 9.  Whether it was permissible for White to post the order at

work, or for Dalton to remove it, based on her own allegations, persons at work had

actual knowledge of the order.  Accordingly, the alleged action of taking down the

order, could have caused White no damage.  Moreover, it is a far cry from the type

of affirmative conduct – between the law enforcement officer and the future

criminal actor – that is necessary to state a claim under the Due Process Clause.

In addition, even if sufficient affirmative conduct were established in this

case, the state-created danger exception also requires that the conduct at issue

_____

[6] White also suggests that Defendant Boynton-Herr should have arrested
Leonard when Leonard picked up White at work.  Complaint 9-10.  However, White
also denies that Leonard picked her up at work.  *Id.*  Such contradictory allegations
of facts within the Plaintiff's knowledge are insufficient to state a claim.  In any
event, they would not elevate the conduct at issue to the type of collusive activity
necessary to state a Due Process claim.

"shock the conscience." *See Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (no Due Process violation unless "the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998))). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity....'" *Lombardi,* 485 F.3d at 81 (quoting *Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (internal quotation omitted)). The allegations of the Complaint simply do not come close to that standard.

In sum, White has failed to state a claim for violation of the Due Process Clause. At a minimum, given the above authorities, the Federal Defendants did not violate any clear constitutional law in connection with the claims set out in the Complaint. No case would have made it "apparent" to them that their conduct would have violated the Constitution. *See Anderson*, 483 U.S. at 640; *Lennon*, 66 F.3d at 425. No more is necessary in order to afford them the protections of qualified immunity. *See*, *e.g.*, *Poe v. Leonard,* 282 F.3d 123, 133 (2d Cir. 2002) (qualified immunity available even if "reasonable officers would disagree about the legality of the defendant[s] conduct under the circumstances").

14

**C.    White Does Not State A Violation, Clear Or Otherwise, Of The Equal Protection Clause**

The Complaint's brief reference to the Equal Protection Clause fails to state an actionable claim for relief and, therefore, qualified immunity also protects the Federal Defendants with regard to that cause of action.  To state an Equal Protection claim, a plaintiff must show she was "treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Myers v. Barrett,* No. 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997).  Both allegations are essential to such a claim. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) ("plaintiff must allege that similarly situated persons have been treated differently"); *Warden v. Pataki,* 35 F. Supp. 2d 354, 361 (S.D.N.Y. 1999) ("discriminatory purpose" is the "*sine qua non* of an equal protection claim").  The failure to make such allegations is grounds for dismissal. *See Seabrook v. City of New York*, 509 F. Supp. 2d 393, 401-02 (S.D.N.Y. 2007) ("complete failure to allege actual disparate treatment with respect to a similarly situated class is grounds for dismissing the equal protection claim"); *Lown v. Salvation Army, Inc.,* 393 F. Supp. 2d 223, 241 (S.D.N.Y. 2005) (dismissing for failing to allege that "defendants engaged in intentional discriminatory conduct"); *Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Auth.,* 70 F. Supp. 2d 580, 592 (D. Md. 1998) (dismissing for failure to allege "intentional discrimination").

15

In this case, the Complaint contains no allegations suggesting that White was treated differently from similarly-situated persons or that the Federal Defendants intentionally discriminated against her. White, thus, makes none of the allegations necessary to state an Equal Protection claim, and any passing citations to that provision are simply inadequate to withstand a motion to dismiss. *See Chaney v. Koupash*, No. 04-CV-136, 2008 WL 5423419, at *20 (N.D.N.Y. Sept. 26, 2008) ("vague and conclusory allegations, are insufficient to show an equal protection violation"); *see also Iqbal*, 129 S. Ct. at 1948; *Twombly*, 127 S. Ct. at 1965, 1968. Where a plaintiff has failed adequately to allege a violation of clear constitutional law against a federal official, qualified immunity bars the cause of action. Such is the case here.

### D.    White Does Not State A Violation, Clear Or Otherwise, Based On The Allegedly-False Statements

Although it is unclear the precise nature of White's claims involving allegedly-false statements, Complaint 11-12, to the extent she is attempting to fashion a "stigma-plus" cause of action, it fails as a legal matter. Defamation alone is not actionable under the federal Constitution, nor is recovery possible for mere loss of reputation. If the defamation causes a loss of government employment, however, the Due Process clause has been found to provide a possible remedy. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Paul v. Davis*, 424 U.S. 693, 708-09 (1976). In such circumstances, a plaintiff must establish both a stigmatizing

16

statement "plus" termination from government employment.  This theory provides

no relief to White, however, on at least two separate grounds.

First, the Complaint fails to allege that the purported false statements

identified in the Complaint caused White to be terminated.  Just the opposite.  The

Complaint clearly alleges that White "resigned" her position with Customs and

Border Protection.  Complaint 31.  *See also* Declaration of Anthony Palazzetti

(noting same).  "If an employee resigns rather than being terminated, the employee

cannot claim that his liberty was taken away without due process."  *Nocera v. New

York City Fire Comm'r*, 921 F. Supp. 192, 201 (S.D.N.Y. 1996).  "An employee who

resigns is presumed to have done so voluntarily," *Brown v. Windham Northeast

Supervisory Union*, No. 2:05-CV-329, 2006 WL 2548198, at *10 (D. Vt. Aug. 31,

2006), and the Complaint does not contend otherwise.  As a result, no stigma-plus

claim is available as a matter of law.[7]

Second, courts in the Second Circuit have repeatedly held that, to state a

stigma-plus claim:

> the stigmatizing information must be ... **made public**, *Bishop v.
> Wood*, 426 U.S. 341, 348, 96 S. Ct. 2074, 48 L.Ed.2d 684 (1976), **by the
> offending governmental entity**, see *Paul v. Davis*, 424 U.S. 693,
> 708-10, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Wisconsin v.
> Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L.Ed.2d 515 (1971).

---

[7] White's claim is also deficient in that the Complaint fails to allege that she
ever sought, and was denied, a Due Process hearing in connection with her
resignation.  The majority of the Circuit Courts of Appeals have denied Due Process
claims where plaintiffs have failed to request a hearing.  *See, e.g.*, *Wojcik v. Mass.
State Lottery Comm'n,* 300 F.3d 92, 103 (1st Cir. 2002); *Quinn v. Shirey,* 293 F.3d
315, 321-22 (6th Cir. 2002).

*Gentile v. Wallen*, 562 F.2d 193, 197 (2d Cir. 1977) (*per curiam*) (emphasis added);
*see Munno v. Town of Orangetown,* 391 F. Supp. 2d 263, 271-72 (S.D.N.Y. 2005);
*John Gil Constr., Inc. v. Riverso,* 99 F. Supp. 2d 345, 355-56 (S.D.N.Y. 2000); *see
also Phillips v. Vandygriff,* 724 F.2d 490, 492 (5th Cir. 1984). Here, there are no
indications or allegations in the Complaint that the statements claimed to be
defamatory were published by the Federal Defendants to third parties. It appears
from the Complaint that the statements were made in connection with an
unspecified internal investigation by Customs and Border Protection. Complaint
11-12.

Statements shared within a governmental agency, however, do not trigger
the protections of the Due Process Clause because they have not been disseminated
to the "public." For example, in *Asbill v. Housing Auth.*, 726 F.2d 1499 (10th Cir.
1984), plaintiff alleged a Due Process violation in connection with her termination
from state employment. While information concerning the grounds for the
termination were shared within state government, the Court held that "intra-
government dissemination" does not constitute the type of publication necessary to
sustain a Due Process claim. *Id.* at 1503. Similarly, the Second Circuit, in *Gentile*,
rejected a Due Process claim where allegedly-stigmatizing information was
discussed internally during plaintiff's termination proceeding, but was not
publicized by the defendants. 562 F.2d at 197. *See Bollow v. Federal Reserve Bank,*
650 F.2d 1093, 1101 (9th Cir. 1981) ("[u]npublicized accusations do not infringe

18

constitutional liberty interest"); *Munno,* 391 F. Supp. 2d at 271-72 (no Due Process claim where there was "no public discussion" of bases for suspension); *Pagan v. New York State Div. of Parole*, 98-Civ-5840, 2003 WL 22723013, at *8 (S.D.N.Y. Nov. 18, 2003) (no Due Process claim where reason for dismissal "was not published to any third parties").

In light of the above authorities, White has not stated a Due Process claim in connection with the defamatory statements alleged in the Complaint. At a minimum, she has not alleged a clear violation of the Due Process Clause. As a result, qualified immunity protects the conduct of the Federal Defendants.[8]

## V.    Plaintiffs' Official Capacity Claims Are Barred By Sovereign Immunity

The Court lacks jurisdiction over any "official capacity" claims for damages against the Federal Defendants based on principles of sovereign immunity. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983) (all noting that, if sovereign immunity applies, court lacks subject-matter jurisdiction). The caption of the instant Complaint indicates that the Federal Defendants are being

---

[8] The Complaint asserts no cause of action by Plaintiffs Michael and Stephen Dullen against the Federal Defendants, nor could it. Like claims under 42 U.S.C. § 1983, *Bivens* actions are "entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000); *see Hartman v. Moore,* 547 U.S. 250, 255 n.2 (2006) (referring to *Bivens* actions as the "federal analog to [§ 1983] suits brought against state officials"). The Complaint alleges no interactions among the Federal Defendants and the remaining Plaintiffs. In any event, the legal arguments set out above would apply to any claim brought by those Plaintiffs as well.

19

sued in both their individual and official capacities.  Official capacity claims are, in essence, claims against the sovereign.  *See, e.g., Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001) ("action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States").  As sovereign, the United States can only be sued if it has consented to suit.  *Mitchell*, 445 U.S. at 538.  It has not done so in this case.

The United States has not waived its sovereign immunity for constitutional tort claims such as those presented here.  *Castro v. United States,* 34 F.3d 106, 110 (2d Cir. 1994) (no waiver of immunity for allegations that United States "employees have committed constitutional torts"); *McCulley v. Chatigny,* 390 F. Supp. 2d 126, 129 (D. Conn. 2005) (same).  As a result, the Court lacks jurisdiction of these claims, and they must be dismissed.  Indeed, the Court has already granted immunity to various state officials, sued in their official capacities, based on the analogous doctrine of Eleventh Amendment immunity.  *See* Opinion and Order 18-20.

## VI.    Conclusion

In light of the foregoing, the Federal Defendants respectfully request that the Court dismiss the Complaint brought by Plaintiffs in this action and order such other and further relief as the Court deems appropriate.

Dated at Burlington, in the District of Vermont, this 6th day of July, 2009.

Respectfully submitted,

UNITED STATES OF AMERICA

PAUL J. VAN DE GRAAF
Acting United States Attorney


By:    /s/ *Timothy B. Tomasi*
Timothy B. Tomasi
Assistant United States Attorney
P.O. Box 570
Burlington, Vermont 05402
(802) 951-6725
Timothy.Tomasi@usdoj.gov

Counsel for Defendants
Kevin Voight, Therese Boynton-Herr,
and Merrill Dalton

21